1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       SOUTHERN DISTRICT OF CALIFORNIA

10

11   STEPHEN TONEY,                        Case No. 11cv1871-LAB (BLM)

12                          Petitioner,    **REPORT AND RECOMMENDATION**
                                           **FOR ORDER DENYING PETITION**
13        v.                               **FOR WRIT OF HABEAS CORPUS;**
                                           **AND ORDER DENYING REQUEST**
14                                         **FOR EVIDENTIARY HEARING;**
                                           **DENYING MOTION FOR DISCOVERY;**
15   GARY SANDOR, Warden, et al.           **AND DENYING MOTION FOR**
                                           **APPOINTMENT OF COUNSEL**
16                         Respondents.
                                           [ECF Nos. 4, 30, and 32]
17

18

19        This Report and Recommendation is submitted to United States District Court Judge

20   Larry A. Burns pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the

21   United States District Court for the Southern District of California.  On August 17, 2011,

22   Petitioner Stephen Toney, a state prisoner proceeding pro se and in forma pauperis,

23   commenced these habeas corpus proceedings pursuant to 28 U.S.C. § 2254.  ECF No. 1.

24   Petitioner filed a First Amended Petition on October 5, 2011, challenging his conviction of

25   unlawful taking or driving of a vehicle, hit and run driving, dissuading a witness by force or

26   threat, and dissuading a witness while out of custody on bail.  ECF No. 4 at 2 ("FAP").

27   Respondent filed an answer on December 16, 2011.  ECF Nos. 11, 13.  Petitioner filed a

28   traverse on January 12, 2012.  ECF No. 18.  Petitioner then moved to file a second amended

petition, which was granted, but Petitioner ultimately decided to proceed forward using his FAP.  ECF Nos. 20, 23, and 24.  On June 8, 2012, Respondent filed a new answer to the First Amended Petition.  ECF No. 28 ("Ans.").  Although Petitioner did not file a new traverse, Petitioner did file a motion for discovery and a motion to appoint counsel, and further requests that the Court conduct an evidentiary hearing.  ECF Nos. 30 and 32.

This Court has considered the First Amended Petition, Respondent's second Answer, Petitioner's original Traverse, Petitioner's motions, and all supporting documents filed by the parties.  For the reasons set forth below, this Court **RECOMMENDS** that Petitioner's First Amended Petition for Writ of Habeas Corpus be **DENIED**.  The Court also **DENIES** Petitioner's motion for discovery, motion for appointment of counsel, and request for an evidentiary hearing.

## **FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are taken from the California Court of Appeal's opinion in People v. Toney, Appeal No. D055608, slip op. (Cal. Ct. of App. Mar. 23, 2010).  Lodgment 5.  The Court presumes the state court's factual determinations to be correct absent clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); see also Parke v. Raley, 506 U.S. 20, 35 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness).

On September 14, 2007, Jesus Valdez Eguino was awakened by the sound of his red 1993 Ford F-150 pickup truck being started between 4:30 a.m. and 5:00 a.m.  Before Eguino could get outside, someone drove away in the truck.  Eguino notified the National City Police Department, which listed the truck in the database of stolen vehicles.

At 6:45 p.m. that evening, Victor Ruiz was walking in an alley near Estrella Avenue en route from a store to his fiancee's residence when he saw a red Ford pickup truck moving in reverse toward his fiancee's parked vehicle, a Honda Civic.  The rear bumper of the truck hit the rear bumper of the Civic.  The driver exited the truck, walked by Ruiz and continued down the alley.  Ruiz yelled for the driver to stop but was ignored.  Ruiz called the police.

While Ruiz was discussing the hit-and-run incident with the responding officer, he observed Toney walking in the alley.  Ruiz pointed at Toney and told the officer that Toney was the driver of the red truck.  Police arrested Toney.

1
2
3
4

> On September 18, after he had been released on bail, Toney stood outside the residence of Ruiz's fiancee and yelled, "Come out. I'm going to kill you." Ruiz, who was inside the residence, heard Toney say he was going to beat him, kill him, break the windows on the Civic and steal it.

Lodgment 5 at 2.

5   On September 24, 2008, the People of the State of California filed a consolidated

6   information charging Petitioner with the unlawful taking or driving of a vehicle, receipt of

7   stolen property, hit and run driving, possession of marijuana, two counts of dissuading a

8   witness by force or threat, and a special allegation of dissuading a witness by force or threat

9   while out of custody on bail. Lodgment 1 at 5-7. Petitioner's first trial resulted in a hung

10   jury. Lodgment 5 at 1. In a retrial, the jury found Petitioner guilty of the unlawful taking

11   or driving of a vehicle, hit and run driving, and dissuading a witness by force or threat. Id.

12   The jury also found true the special allegation of dissuading a witness by force or threat

13   while out of custody on bail. Id. Petitioner subsequently admitted a prior strike allegation

14   of assault with a deadly weapon. Lodgment 28 at 294-5. On July 31, 2009, the trial judge

15   sentenced Petitioner to six years in state prison. Id. at 321; see also Lodgment 5 at 2.

16   Petitioner's appellate counsel filed a brief pursuant to People v. Wende, 600 P.2d 1071

17   (1979), in the California Court of Appeal, Fourth Appellate District. Lodgment 2. On March

18   23, 2010, the Court of Appeal issued a written opinion affirming the conviction. Lodgment 5.

19   Petitioner subsequently filed numerous direct and collateral challenges to his conviction,

20   which were ultimately unsuccessful. On August 17, 2011, Petitioner filed his first federal

21   habeas petition which, on August 23, 2011, was dismissed by District Judge Larry A. Burns

22   for failing to name a proper respondent and failing to satisfy the Court's filing fee

23   requirement. ECF No. 2. On October 5, 2011, Petitioner filed his First Amended Petition.

24   On April 5, 2012, despite having been granted leave to file a second amended petition,

25   Petitioner elected to proceed forward on his First Amended Petition. ECF No. 24.

26   Respondent filed an answer to the First Amended Petition on June 8, 2012. ECF No. 28.

27   Petitioner filed a traverse on January 12, 2012. ECF No. 18.

28   / / /

## SCOPE OF REVIEW

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (West 2012).

The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.  Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (West 2012).  In making this determination, a court may consider a lower court's analysis.  Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (authorizing a reviewing court to look through to the last reasoned state court decision).  Summary denials are presumed to constitute adjudications on the merits unless "there is reason to think some other explanation for the state court's decision is more likely." Harrington v. Richter, 131 S.Ct. 770, 784-785 (2011).

A state court's decision is "contrary to" clearly established federal law if the state court: (1) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases"; or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

A state court's decision is an "unreasonable application" of clearly established federal law where the state court "'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413). "[A] federal habeas court may not issue [a] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable." Id. at 75-76 (emphasis added) (citations and internal quotation marks omitted).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.

If the state court provided no explanation of its reasoning, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Harrington, 131 S.Ct. at 786.  In other words, a federal court may not grant habeas relief if any fairminded jurist could find the state court's ruling consistent with relevant Supreme Court precedent.

Finally, habeas relief also is available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2) (1996); Wood v. Allen, 130 S.Ct. 841, 845 (2010).  A state court's decision will not be overturned on factual grounds unless this Court finds that the state court's factual determinations were objectively unreasonable in light of the evidence presented in state court. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); see also Rice v. Collins, 546 U.S. 333, 341-42 (2006) (the fact that "[r]easonable minds reviewing the record might disagree" does not render a decision objectively unreasonable).  This Court will presume that the state court's factual findings are correct, and Petitioner may overcome that presumption only by clear and

1  convincing evidence.  See 28 U.S.C. § 2254(e)(1); Schriro v. Landrigan, 550 U.S. 465,
2  473-474 (2007).

3  **DISCUSSION**

4      Petitioner raises four grounds for relief in his First Amended Petition.  First, Petitioner
5  argues he is actually innocent of committing the offenses for which he was convicted.
6  FAP at 6.  Next, Petitioner argues that his right to a fair trial was violated because both the
7  prosecutor and Petitioner's trial counsel failed to produce exculpatory evidence.  Id. at 11.
8  Third, Petitioner claims that his trial counsel provided ineffective assistance of counsel.
9  Id. at 15.  Finally, Petitioner claims that his appellate counsel provided ineffective assistance
10  of counsel.  Id. at 21.  Respondent contends that the Petition should be denied because the
11  state court's determination of Petitioner's case was objectively reasonable.  Ans.

12  **A.   Actual Innocence**

13      Petitioner claims that he is actually innocent of the underlying charges.  FAP at 6.  In
14  support, Petitioner states that two transcripts were produced of the initial 911 call to police
15  that should be viewed as "false evidence" because they are purportedly inconsistent.  Id.
16  Petitioner also alleges that the police report concerning the incident is inconsistent, and
17  conflicts with the testimony of a police officer.  Id. at 7.  Respondent argues that Petitioner's
18  claim should be denied because Petitioner has failed to make a showing of actual innocence.
19  Ans. at 8-11.

20      As a threshold matter, it appears that Petitioner's claim of actual innocence is
21  unexhausted.  Generally, a state prisoner must exhaust all available state court remedies
22  either on direct appeal or through collateral proceedings before a federal court may consider
23  granting habeas relief.  28 U.S.C. § 2254(b)(1).  A state prisoner satisfies the exhaustion
24  requirement by fairly presenting his claim to the appropriate state courts at all appellate
25  stages afforded under state law.  Baldwin v. Reese, 541 U.S. 27, 29 (2004); Casey v. Moore,
26  386 F.3d 896, 915 (9th Cir. 2004).  However, a petition for habeas corpus relief "may be
27  denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies
28  available in the courts of the state."  28 U.S.C. § 2254(b)(2); see Cassett v. Stewart, 406

F.3d 614, 624 (9th Cir. 2005) (a federal court considering a habeas petition may deny an unexhausted claim on the merits when it is perfectly clear that the claim is not "colorable"). Pursuant to 28 U.S.C. § 2254(b)(2), this Court will deny Petitioner's unexhausted claim of actual innocence for the following reasons.

First, the Supreme Court has not established the existence of a freestanding actual-innocence claim on federal review of a non-capital habeas case.[1]  District Attorney's Office for Third Judicial District v. Osborne, 557 U.S. 52, 71 (2009) (whether federal constitutional right to be released upon proof of "actual innocence" exists "is an open question").  Hence, even if Petitioner had exhausted this claim in state court, absent Supreme Court authority establishing the existence of such a claim, the rejection of the claim cannot be contrary to, or involve an unreasonable application of, clearly established Supreme Court authority.

Second, even assuming that such a claim exists, it is subject to an "extraordinarily high" threshold showing.  See Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997) ("A habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt and must affirmatively prove that he is probably innocent.") Id. (citing Herrera v. Collins, 506 U.S. 390, 400 (1993)).  An actual innocence claim must be based on "new reliable evidence" not presented at trial.  Schlup v. Delo, 513 U.S. 298, 324 (1995). Petitioner's allegations in support of his claim of actual innocence fail to provide any new evidence and come nowhere close to meeting this extraordinarily high threshold.  Rather, Petitioner repeatedly contends that certain evidence used against him at trial was "inconsistent" and "conflicting," but fails to explain how these purported inconsistencies would have impacted the jury's ultimate verdict, yet alone prove his innocence.  FAP at 6-11. For example, when referring to the transcripts of the 911 call, Petitioner argues that "for the word[s] to be different, [this] is proof that some manipulation [has] taken place [among] these documents, which should be viewed as false evidence." Id. at 6.  In other words, Petitioner believes that because the two transcripts are not identical, they must have been

---

[1] However, a petitioner whose petition for habeas corpus is procedurally barred may still obtain consideration of the merits of his petition if he can establish "actual innocence."  See Schlup v. Delo, 513 U.S. 298 (1995).  This doctrine is not applicable to the instant case.

1  manipulated by the prosecution.  A closer look at the 911 transcripts, however, shows that

2  they were prepared by two different people.[2]  A myriad of possibilities could explain why the

3  two transcripts are not identical - including human error or a low quality recording - yet

4  Petitioner fails to address any of these possibilities.  Using the same misguided logic,

5  Petitioner argues that the police report was falsified because it states that Jesus Valdez

6  Eguino reported his truck stolen on September 9, 2007, then later states that he reported

7  the truck stolen on September 14, 2007, the day of the incident. FAP at 7.  Again, Petitioner

8  fails to explain how this discrepancy points to his innocence and ignores the fact that

9  numerous items of evidence and testimony confirm that Jesus Valdez Eguino reported his

10  truck stolen on September 14, 2007.

11       The remainder of Petitioner's claim asserts that Petitioner's trial lawyer failed to

12  provide effective assistance of counsel because he purportedly failed to challenge or object

13  to the "inconsistencies" in evidence.  The Court finds it appropriate to address these

14  arguments in Petitioner's third claim, infra, for ineffective assistance of trial counsel.

15       Notwithstanding the absence of Supreme Court authority establishing the existence

16  of a freestanding actual innocence claim, the Court finds Petitioner's claim to be wholly

17  devoid of any evidence pointing to his innocence[3] and therefore **RECOMMENDS** that

18  Petitioner's claim be **DENIED**.

19  **B.    Failure to Disclose Evidence**

20       Petitioner contends that both the prosecutor and his trial counsel failed to disclose

21  exculpatory evidence in violation of the Fifth and Fourteenth Amendments, as interpreted

22  by Brady v. Maryland, 373 U.S. 83, 87 (1963).  FAP at 11.  Specifically, Petitioner claims that

23  

24       [2] Although the state court lodgments do not contain copies of these transcripts, Petitioner provided the Court with copies of these transcripts in his "Motion to Take Judicial Notice of Adjudicative Facts," filed on May 3, 2012.  See ECF No. 27.

26       [3] Petitioner also argues that his due process rights were violated because the prosecutor presented "false evidence and perjury testimony" when he presented the inconsistent evidence and testimony.  To establish a due process violation on these grounds, a petitioner must show that the admission of such evidence rendered the trial fundamentally unfair.  See Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999).  Here, there is no such evidence.  Rather, the potentially conflicting evidence and testimony was presented to the jury along with overwhelming evidence supporting the jury's determination of guilt, and the jury was able to consider and evaluate all of the evidence.  There was no constitutional violation.

1   both the prosecutor and his trial counsel: (1) failed to disclose a jailhouse phone call made

2   by Petitioner to Ms. Lucas; (2) failed to disclose and test for "DNA" an open beer can

3   purportedly recovered from Jesus Valdez Eguino's truck; and (3) failed to disclose a

4   surveillance video which purportedly shows Petitioner's whereabouts on the date of the

5   incident.  Id.

6       Respondent generally argues that Petitioner's understanding of Brady is misguided

7   since the focus of Brady is on the government's failure to disclose exculpatory evidence.

8   Ans. at 22.  With respect to the open beer can, Respondent argues that this is not

9   exculpatory evidence since it does not prove whether or not Petitioner was driving the car

10  at the time of the crime.  Id. at 23.  Respondent also argues that the phone call made by

11  Petitioner to Ms. Lucas is not Brady evidence because Petitioner knew of its existence.

12  Finally, Respondent contends that the surveillance tape which purportedly shows Petitioner's

13  whereabouts is not Brady evidence because there is no showing that the prosecution was

14  in possession of the video, and, in any event, Petitioner knew of its existence.  Id.

15      Petitioner raised this claim in the petition for review he filed in the California Supreme

16  Court, which denied the petition without citation of authority.  Lodgment 11.  Petitioner also

17  raised this claim in his second petition before the California Court of Appeal, which denied

18  the petition and found it to be procedurally barred.  Lodgment 25.  Accordingly, this Court

19  must "look through" to the state trial court's opinion denying Petitioner's second petition for

20  habeas corpus as the basis for its analysis.  Ylst, 501 U.S. at 801-06; see Lodgment 9.  That

21  Court analyzed Petitioner's claim as follows:

22      On May 28, 2010, Petitioner filed this second petition for writ of habeas corpus.
        Petitioner claims that false evidence was used against him at trial, that the court was
23      biased against him and erred in admitting 911 tape contents into evidence, that he
        received ineffective assistance of appellate counsel, that defense counsel failed to
24      disclose exculpatory evidence and was ineffective, that the prosecutor committed
        misconduct, and that he was not provided with a record of the case for appeal.
25
        The petition is denied.
26
        In general, habeas corpus cannot serve as a second appeal, and matters that were
27      raised and rejected on appeal are not cognizable on state habeas corpus in the
        absence of special circumstances. (In re Huffman (1986) 42 Cal.3d 552, 554-555; In
28      re Terry (1971) 4 Cal.3d 911, 927.)

1

2

3

4

5

6

    Additionally, even petitioner, even one filing in pro per, must set forth a prima facie statement of facts that would entitle him to habeas corpus relief. (In re Bower (1985) 38 Cal.3d 865, 872; In re Hochberg (1970) 2 Cal.3d 870, 875 fn 4.)  The petitioner then bears the burden of proving the facts upon which he bases his claim for relief. (In re Riddle (1962) 57 Cal.2d 848, 852.)  Vague or conclusory allegations do not warrant habeas relief.  (People v. Duvall (1995) 9 Cal.4th 464, 474).

    Here, the claims raised in the instant petition were raised and rejected on appeal or are unsupported by any evidence.  Accordingly, the petition for writ of habeas corpus is denied.

7

Lodgment 9 at 2.

8       The United States Supreme Court has held that the "suppression by the prosecution

9 of evidence favorable to an accused upon request violates due process where the evidence

10 is material either to guilt or to punishment, irrespective of the good faith or bad faith of the

11 prosecution." Brady, 383 U.S. at 87.  To prevail on a Brady claim, Petitioner must show that:

12 (1) the evidence was exculpatory or impeaching; (2) the evidence was suppressed by the

13 State; and (3) the suppression resulted in prejudice.  Strickler v. Greene, 527 U.S. 263, 281-

14 82 (1999).  Evidence is material "if there is a reasonable probability that, had the evidence

15 been disclosed to the defense, the result of the proceeding would have been different.  A

16 reasonable probability is a probability sufficient to undermine the confidence in the

17 outcome."  United States v. Bagley, 473 U.S. 667, 682 (1985).

18       Petitioner first contends that the prosecution violated Brady by failing to disclose a

19 recording of a jailhouse phone call made by Petitioner to Ms. Lucas, during which Petitioner

20 purportedly asks her to move his minivan from the alleyway.  FAP at 11.  Petitioner's

21 argument is unintelligible and offers no explanation for why such evidence is exculpatory or

22 would have had any impeachment value.  At trial, Victor Ruiz testified that he saw a red

23 pickup truck rear end his fiancee's Honda Civic, and that he then saw Petitioner exit the truck

24 and walk away through the alleyway.  Lodgment 28, Vol. 3 at 60-61.  Petitioner provides no

25 evidence, facts, or allegations indicating that Ms. Lucas was an eyewitness to the crash or

26 would have contradicted Victor Ruiz's testimony.  Absent such evidence, the alleged phone

27 call is merely irrelevant hearsay as the presence of Petitioner's minivan in the alleyway does

28 not impeach Victor Ruiz's testimony that he saw Petitioner driving the truck.  In addition,

Petitioner obviously was aware of the phone call and could have subpoenaed it or called Ms. Lucas as a witness if such evidence was relevant or helpful.

Next, Petitioner contends that the prosecution failed to produce and test for DNA an open beer can allegedly recovered from the truck. FAP at 11. Again, Petitioner fails to provide any explanation for why this evidence is exculpatory. As Respondent points out, at best, testing the open beer can for DNA could have shown that the can did not belong to Toney. Ans. at 23. However, that result would have little, if any value, as the open can could have been in the truck prior to Petitioner entering the truck. In any event, Victor Ruiz testified at trial that he saw Petitioner driving the red pickup truck. Lodgment 28, Vol. 3 at 60-61. Hence, the potential lack of Petitioner's DNA on the open beer can is not exculpatory and would have had minimal, if any, impeachment value.

Petitioner also asserts that his trial counsel violated <u>Brady</u> by failing to produce a surveillance video which allegedly shows Petitioner's whereabouts at the time of the incident. FAP at 14. This claim is meritless for two reasons. First, Petitioner has not established that the prosecution was in possession of such a surveillance video. In fact, a review of the record shows that Petitioner's trial counsel was in possession of the video and, after reviewing its contents, decided not to use the video at trial.[4] Lodgment 10 at 300. Second, even if Petitioner could show that the prosecution was in possession of the surveillance video and had withheld it from the defense, Petitioner fails to show why this video is exculpatory as the video apparently is blank during the time the charged crime was committed. Lodgment 19, Exh. 1.

The California Court of Appeal's rejection of Petitioner's <u>Brady</u> claim was not contrary to, or an unreasonable application of, any clearly established federal law, nor did it involve an unreasonable determination of the facts in light of the evidence presented. Although the Court of Appeals did not expressly cite <u>Brady</u>, it found that Petitioner had failed to make any prima facie showing that a <u>Brady</u> violation occurred in his trial. This Court agrees. Not only

---

[4] In Petitioner's fourth habeas petition before the state trial court, Petitioner included an exhibit showing that his attorney had reviewed the surveillance tape, and noted that the tape would look suspicious because it jumped from 3:00 p.m. to 10:00 p.m. Lodgment 19, Exh. 1.

has Petitioner failed to show that any of the above-mentioned evidence is exculpatory, Petitioner makes no showing whatsoever that the government improperly suppressed such evidence or that Petitioner was prejudiced as a result of any alleged suppression. Consequently, the Court **RECOMMENDS** that Petitioner's Brady claim be **DENIED**.

## C.   Ineffective Assistance of Trial Counsel

Petitioner alleges that his Sixth Amendment right to effective assistance of counsel was denied by his trial counsel's failure to interview and call witnesses who would have purportedly testified in Petitioner's favor. FAP at 15. Petitioner's first and second claims also contain allegations of ineffective assistance of counsel. Specifically, Petitioner challenges his trial counsel's purported failure to object to "misleading comments" made by the prosecution during closing arguments. FAP at 12.

The California Supreme Court summarily denied Petitioner's petition for review, so this Court must look through to the state appellate court's decision as the basis for its analysis:

> Toney claims his counsel rendered ineffective assistance by: (1) not contacting witnesses who testified on Toney's behalf in the first trial as well as two additional witnesses whom Toney wanted to present in the second trial; (2) not introducing documents to support Toney's testimony regarding his education and ownership of various vehicles; (3) not objecting to prosecutor's arguments that Toney lied during his testimony; (4) not presenting a video to corroborate Toney's version of the events or presenting any defense; and (5) not objecting to a 911 recording in which Toney's voice is not heard.
>
> An attorney provides deficient representation if the attorney's performance fell below an objective standard of professional competence and resulted in prejudice to the defendant's case. The law presumes counsel's performance fell within the wide range of professional competence and counsel's actions and inactions can be explained as a matter of sound trial strategy. Tactical errors, therefore, do not warrant a reversal where the record does not reveal the reasons for counsel's tactical decisions, unless there could be no conceivable legitimate reason. Thus, a defendant bears the burden of demonstrating both that counsel's performance fell below the standards of professional competence and that he or she suffered prejudice as a result. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. A reviewing court may dispose of a claim of ineffective assistance of counsel without addressing the attorney's competence if it finds that the defendant has failed to demonstrate prejudice.
>
> As to not recalling witnesses who testified in the first trial, counsel told Toney that his decision was based on reading the transcript of the first trial. We do not see reason to question this tactical decision. With respect to counsel's failure to contact the two proposed new witnesses, Toney does not identify these individuals or explain what they might have to say that is relevant to the case. This conclusory showing falls well short of establishing inadequate representation.

As to counsel's failure to introduce documents corroborating Toney's testimony regarding his education and ownership of various vehicles, these are collateral issues and Toney cannot show prejudice. The fact that the prosecutor referred to the lack of corroboration in his closing argument does not change our prejudice analysis.

Toney's complaint that counsel failed to object to the prosecutor's argument that he had lied during his testimony is not well founded. The prosecutor did not say that Toney lied. Rather, the prosecutor argued that there were various reasons that the jury could consider in deciding Toney's credibility, including his felony convictions, personal interest in how the case was decided, internal inconsistencies and lack of corroboration. These were proper comments on the evidence. Counsel is not ineffective for failing to object to proper argument.

As to counsel failing to present a favorable video, the record before us does not disclose what Toney is referring to as "the video." We disagree that counsel did not present a defense.

As we indicated earlier, the tape of the 911 calls was properly admitted. Counsel cannot be faulted for not making a futile objection.

Lodgment 5 at 6-8 (citations omitted).

To prevail on his petition for writ of habeas corpus, Petitioner must demonstrate that the California Court of Appeal's rejection of his ineffective assistance of counsel claim is contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts presented. Under clearly established federal law, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To prove ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defendant. Id. at 687. The proper measure of attorney performance is "simply reasonableness under prevailing professional norms." Id. at 688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689. To determine whether errors of counsel prejudiced the defendant, a court "must consider the totality of the evidence before the judge or jury" and consider whether "the

defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." Id. at 696.  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either one of the Strickland prongs.[5]

A review of the California Court of Appeal's decision shows that it applied clearly established federal law as set forth in Strickland to Petitioner's claim of ineffective assistance of counsel.  Therefore, Petitioner bears the burden of proving that the Court of Appeal applied Strickland to the facts of this case in an "objectively unreasonable" manner. See Woodford v. Visciotti, 537 U.S. 19, 25 (2003).

Petitioner claims that his trial counsel failed to interview and call six witnesses who testified during the first trial.  FAP at 15-20.  Petitioner alleges that these witnesses would have testified in favor of Petitioner and would have cast doubt on the testimony of the prosecution's "star witness," Victor Ruiz, and would have corroborated Petitioner's own testimony.  Id.  Petitioner further alleges that his trial counsel failed to interview and call several new witnesses, and failed to object to misleading comments made by the prosecution during closing argument.[6]

Respondent generally argues that the California Court of Appeal's denial of Petitioner's claim was reasonable.  Ans. at 24-30.  This Court agrees.  To the extent Petitioner complains that his trial counsel's performance was deficient because he chose not to call several witnesses who testified during the first trial, the Court of Appeal found that this was a tactical decision based on a reading of the transcripts from the first trial, and did not constitute "inadequate representation."  Lodgment 5 at 6-8.  A review of the record supports this conclusion.  In a pre-sentencing hearing where Petitioner raised the same complaint, the trial judge noted that "there was some discussion with Mr. Blakely [Petitioner's counsel at the second trial] that he was making tactical decisions about what witnesses to put on based on

---

[5] See Strickland, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails one).

[6] Petitioner raises this argument as part of his first and second claims for relief.  See FAP at 9-14.

the comments of the jurors at the prior trial." Lodgment 10 at 301.  During the same hearing, Petitioner's counsel from the first trial stated that "frankly, the jury we talked to at the end of the case said they were not very impressed with [what] they referred to as the parade of witnesses that we put on." Id. at 300.

Reasonable tactical decisions, including decisions regarding counsel's presentation of a case, are "virtually unchallengeable." Strickland, 466 U.S. at 687-90.  Disagreement with a tactical decision not to call a particular witness cannot form the basis of a claim for ineffective assistance of counsel.  Wildman v. Johnson, 261 F.3d 832 at 839 (9th Cir. 2001); see also Morris v. California, 966 F.2d 448, 456 (9th Cir. 1991).  Here, the record indicates that trial counsel read all of the witness testimony from the first trial, considered the substance of the testimony, as well as the jury's opinion as to the value of it, and then made an informed decision not to call the witnesses.  This process and decision certainly falls within the range of reasonable representation.

Petitioner further alleges that his trial counsel failed to interview and call "several new witnesses." FAP at 15.  Remarkably, Petitioner fails to identify these witnesses even after the Court of Appeal denied his claim for this reason.  See Lodgment 5 at 8.  Furthermore, as Respondent points out, Petitioner has not provided any declarations from these hypothetical witnesses, nor has Petitioner provided a description of what testimony he expected to be elicited from these witnesses. Ans. at 28.  Hence, this Court finds that the Court of Appeal reasonably applied clearly established federal law.  See Matylinsky v. Budge, 577 F.3d 1083, 1097 (9th Cir. 2009) (petitioner failed to satisfy the prejudice prong under Strickland when he failed to show "what additional testimony his suggested forty-one witnesses would give in order to change the outcome of the trial"); Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000) (petitioner's claim for ineffective assistance of counsel for failure to call witnesses is without merit where petitioner did not provide evidence that the witness would testify or present affidavits from any alleged witnesses).

Next, Petitioner complains that his trial counsel rendered ineffective assistance by failing to object when the prosecution stated during closing argument that Petitioner's

testimony was uncorroborated.  FAP at 12.  The Court of Appeal found the prosecution's closing argument to be proper and found Petitioner's ineffective assistance allegation to be without merit.  Lodgment 5 at 8.  A review of the record confirms this conclusion.  During closing argument, the prosecutor stated that Petitioner's testimony was not credible and was uncorroborated.  Lodgment 28, Vol. 3 at 250.  This statement was based on the evidence admitted at trial, including Mr. Ruiz's testimony and Petitioner's prior criminal history.  Hence, the prosecutor's argument was proper and Petitioner's counsel was not ineffective for failing to object to such argument.  See United States v. Necoechea, 986 F.2d 1273, 1281 (9th Cir. 1993) ("Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct.")  In the context of closing arguments, it is not misconduct for the prosecutor to argue reasonable inferences based on the record.  United States v. Bautista, 201 Fed.Appx. 414, 418 (9th Cir. 2006), citing United States v. Atcheson, 94 F.3d 1237, 1244 (9th Cir. 1996).  Petitioner also fails to make any showing that he was prejudiced by such argument, and thus fails to meet his burden under Strickland.  Petitioner merely states that "[i]n sum, there is a reasonable probability that had [defense] counsel not performed deficiently, the verdict would have been more favorable."  Id. at 19.  Counsel is presumed to have provided reasonable assistance, and Petitioner's conclusory and self-serving allegations fail to show that he was prejudiced by his counsel's failure to call witnesses or object to statements made during closing argument.  Consequently, the Court finds that Petitioner was not prejudiced and **RECOMMENDS** that Petitioner's claim for ineffective assistance of counsel be **DENIED**.

**D.    Ineffective Assistance of Appellate Counsel**

Petitioner claims that his appellate counsel rendered ineffective assistance by (1) not reviewing transcripts from the first trial, (2) failing to submit transcripts from the first trial to the California Court of Appeal, and (3) failing to provide Petitioner with copies of the transcripts from the first trial.  FAP at 21-25.  Petitioner further contends that his petition should be granted because he was "denied access to a free transcript on appeal."  Id. at 21.

Where a petitioner challenges the effectiveness of his appellate counsel, the <u>Strickland</u> standard applies in the same manner as claims of ineffective assistance of trial counsel. <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000).  Hence, Petitioner must demonstrate that his appellate counsel was deficient and that the deficient performance prejudiced his defense. <u>Id.</u> at 285; <u>Strickland</u>, 466 U.S. at 687.  In this case, appellate counsel filed a brief pursuant to <u>People v. Wende</u>, 25 Cal.3d 436 (1979) and <u>Anders v. California</u>, 386 U.S. 738 (1967), identifying eight potential trial errors.  Lodgment 5 at 3.  Petitioner then filed a supplemental brief identifying numerous additional errors.  <u>Id.</u> at 3-8.  The appellate court considered all of the issues identified by either appellate counsel or Petitioner.  <u>Id.</u>  In rejecting Petitioner's claim of ineffective assistance of appellate counsel, the Court stated

> [a] review of the entire record pursuant to People v. Wende, supra, 25 Cal.3d 436, including the possible issues referred to pursuant to Anders v. California, supra, 386 U.S. 738, has disclosed no other reasonably arguable appellate issue.  Competent counsel has represented Toney on this appeal.

<u>Id.</u> at 8.

Initially, the United States Supreme Court has approved the <u>Wende</u> procedure utilized by the state appellate court in this case.  <u>Smith</u>, 528 U.S. at 284.  However, Petitioner's ineffective assistance of appellate counsel claim does not challenge the <u>Wende</u> procedure; it attacks appellate counsel's failure to identify and adequately challenge the alleged ineffective assistance of trial counsel for failing to call certain witnesses to testify at the second trial.  FAP at 21.  Specifically, Petitioner argues that appellate counsel failed to read the transcripts from the first trial, failed to highlight for the appellate court the fact that trial counsel failed to call critical witnesses who had testified at the first trial to testify at the second trial, and failed to provide the transcripts from the first trial to the appellate court so the appellate court could find the trial error.  <u>Id.</u> at 21-23.  In such a situation, the Supreme Court has stated that a defendant must

> first show that his counsel was objectively unreasonable, see Strickland, 466 U.S. at 687-691, 104 S.Ct. 2052, in failing to find arguable issues to appeal-that is, that counsel unreasonably failed to discovery nonfrivolous issues and to file a merits brief raising them.  If [defendant] succeeds in such a showing, he then has the burden of demonstrating prejudice.  That is, he must show a

1    reasonable probability that, but for his counsel's unreasonable failure to file a
2    merits brief, he would have prevailed on his appeal.

3    Smith, 528 U.S. at 285.  While Petitioner is correct that appellate counsel did not identify this

4    alleged error as a potential issue in the Wende brief, Petitioner did raise the issue and the

5    appellate court considered and rejected it.  Lodgment 5 at 3, 6-7.   As part of the Wende

6    procedure, appellate counsel attests that he has reviewed the entire record and that he is

7    available to brief any legal issues identified by the appellate court as requiring supplemental

8    briefing.  Smith, 528 U.S. at 265-66.  And, the appellate court scours the entire record to

9    determine if any legal issues need additional briefing.  Id.  Because the constitutionally-

10   approved Wende procedure was followed in this case and the legal issue raised in this court

11   was identified by Petitioner and considered by the appellate court, Petitioner has not satisfied

12   the first prong of the Strickland/Smith test.

13       Even if Petitioner could satisfy the first prong of the ineffective assistance of counsel

14   test, he has not and cannot satisfy the second prong.  The appellate court specifically

15   considered, and rejected, Petitioner's claim that his trial attorney provided ineffective

16   assistance of counsel by failing to call during the second trial several of the witnesses who

17   testified at the first trial.  Lodgment 5 at 7.  The appellate court denied this claim on the

18   grounds that it was a reasonable tactical decision made after reading and considering the

19   transcripts from the first trial.[7]  Id.  This Court reached the same conclusion.  See supra at

20
21       [7] As part of his argument, Petitioner also argues that he was improperly denied access to a free transcript on
         appeal.  FAP at 21.  The United States Supreme Court has set forth two criteria to be used in determining whether an
22       indigent defendant, such as Petitioner, is entitled to a transcript of an earlier trial that resulted in a mistrial: "(1) the value
         of the transcript to the defendant in connection with the appeal or trial for which it is sought; and (2) the availability of
23       alternative devices that would fulfill the same function of the transcript." Britt v. North Carolina, 404 U.S. 226, 227 (1971).
         The Supreme Court has interpreted the second prong of Britt to require an "adequate alternative." Bounds v. Smith, 430
24       U.S. 817 (1971).  In Britt, the Court found that the defendant's attorney's trial notes were an "adequate alternative." Britt,
         404 U.S. at 229.  Here, the record does not clearly establish whether appellate counsel or Petitioner had access to the
25       transcript of the first trial.  However, the record that clearly was available to Petitioner, appellate counsel, and the appellate
         court included the trial judge's statement that trial counsel had decided not to call certain witnesses who had testified during
26       the first trial "based on the comments of the jurors at the prior trial" and the statement of counsel who represented
         Petitioner during the first trial that "the jury we talked to at the end of the case said they were not very impressed with
27       [what] they referred to as the parade of witnesses that we put on." Lodgment 10 at 300-01.  As a result, the failure, if any,
         to provide Petitioner with a transcript from the first trial was not prejudicial nor a constitutional violation.  See Madera v.
28       Risley, 885 F.2d 646, 648 (9th Cir. 1989) (to establish a due process violation based on the absence of a record, a petitioner
         must demonstrate that he was prejudiced by the record's absence).

1   p. 15.  Because this argument lacks merit, appellate counsel's failure to raise or identify it

2   in the <u>Wende</u> brief did not prejudice Petitioner.  <u>See</u> <u>Strickland</u>, 466 U.S. at 692 (appellate

3   counsel's failure to raise a non-meritorious claim does not prejudice defendant).

4        The California Court of Appeal's determination that appellate counsel was "competent"

5   and did not provide ineffective assistance of counsel was not contrary to, or an unreasonable

6   application of, any clearly established federal law, nor did it involve an unreasonable

7   determination of the facts.  Accordingly, the Court **RECOMMENDS** that Petitioner's claim

8   for ineffective assistance of appellate counsel be **DENIED**.

9   **E.    Request for Evidentiary Hearing**

10       Petitioner repeatedly requests that the Court convene an evidentiary hearing.  <u>See</u>,

11  <u>e.g.</u>, FAP at 9, 20, and 24.  A federal court's discretion to hold an evidentiary hearing is

12  governed by 28 U.S.C. § 2254(e)(2), which provides:

13       If the application has failed to develop the factual basis of a claim in State
         court proceedings, the court shall not hold an evidentiary hearing on the
14       claim unless the applicant shows that -

15            (A) the claim relies on -

16                 (i) a new rule of constitutional law, made retroactive to cases
                   on collateral review by the Supreme Court, that was previously
17                 made unavailable; or

18                 (ii) a factual predicate that could not have been previously
                   discovered through the exercise of due diligence; and

19            (B) the facts underlying the claim would be sufficient to establish by
20            clear and convincing evidence that but for constitutional error, no
              reasonable factfinder would have found the applicant guilty of the
21            underlying offense.

22       "Federal courts sitting in habeas are not an alternative forum for trying facts and

23  issues which a prisoner made insufficient effort to pursue in state court proceedings."

24  <u>Williams v. Taylor</u>, 529 U.S. 420, 437 (2000).  Here, Petitioner merely argues that there is

25  additional evidence the Court should consider or that there is evidence that contradicts

26  testimony or evidence presented during trial.  However, Petitioner does not establish that

27  his request relies on a new rule of constitutional law, or a factual predicate that could not

28

have been previously discovered through the exercise of due diligence.  Similarly, Petitioner has not alleged facts that would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found him guilty of the underlying offense.  Accordingly, the Court **DENIES** Petitioner's request for an evidentiary hearing.

**F.     Motion for Discovery**

Petitioner also has filed a motion for discovery seeking records from the towing company responsible for impounding Jesus Valdez Eguino's pickup truck, and any police reports prepared by San Diego Police Officer William Orvosh.  ECF No. 30 at 2-3.  Petitioner argues that these documents are necessary for the Court's review of his habeas petition. Id.

A habeas petitioner is not entitled to discovery as a matter of ordinary course.  Bracy v. Gramley, 520 U.S. 899, 904 (1997).  However, Rule 6 of the Federal Rules Governing Section 2254 Cases provides that a "judge, may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."  Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is...entitled to relief..."  See Pham v. Terhune, 400 F.3d 740, 743 (9th Cir. 2005).  Where a petitioner is not entitled to an evidentiary hearing on a claim, discovery on such a claim would be futile.  Kemp v. Ryan, 638 F.3d 1245, 1260 (9th Cir. 2011).  Here, Petitioner fails to show that, if provided with such discovery, he would be entitled to relief.  Rather, Petitioner merely states that such discovery would "prove that all parties involved [have] conspired to change the vehicles and file fraudulent information and evidence."  Even if Petitioner had made such a showing, a federal court reviewing a habeas petition is limited to the record that was before the state court that adjudicated the claim on the merits.  See Cullen v. Pinholster, - - - U.S. - - - -, 131 S.Ct. 1388 (2011).  Accordingly, this Court is unable to consider any evidence not provided in the state court record in deciding Petitioner's claims.  Moreover, the Court finds that there is no cause, good or otherwise, justifying the

1   requested discovery.  Consequently, the Court **DENIES** Petitioner's motion for discovery.

2   **G.     Motion for Appointment of Counsel**

3          Petitioner has also renewed his request for appointment of counsel.  ECF No. 32.

4   Petitioner claims he is illiterate, suffers from a mental disability, and is unable to proceed

5   without counsel.  Id.  Petitioner's first request for appointment of counsel was denied after

6   Magistrate Judge Bernard G. Skomal found that Petitioner had sufficiently represented

7   himself and had a "good grasp of this case and the legal issues involved."  ECF No. 17.

8   Respondent has not filed an opposition to Petitioner's renewed request.

9          The Sixth Amendment right to counsel does not extend to federal habeas corpus

10  actions by state prisoners.  McCleskey v. Zant, 499 U.S. 467, 495 (1991); Nevius v. Sumner,

11  105 F.3d 453, 460 (9th Cir. 1996).  However, habeas petitioners may obtain representation

12  whenever the court "determines that the interests of justice so require."   18 U.S.C.

13  § 3006(a)(2)(B); Terrovona v. Kincheloe, 912 F.2d 1176, 1181 (9th Cir. 1990).  The interests

14  of justice require appointment of counsel when the court conducts an evidentiary hearing

15  on the petition.  Id. at 1177. Unless an evidentiary hearing is required, the decision to

16  appoint counsel is within the discretion of the district court.  Id.

17         In support of his motion, Petitioner claims that he suffers from "depression,

18  hallucination, permanent psychological problems, and paranoid schizophrenia."  ECF No. 32

19  at 6.  However, Petitioner does not provide any medical records supporting this statement,

20  nor does he explain how the alleged symptoms affect his ability to represent himself in this

21  matter.[8]  Moreover, the Court has reviewed all of Petitioner's pleadings in this court, as well

22  as some of the ones filed in state court, and the Court finds that Petitioner has adequately

23  stated his legal claims and the facts he believes supports them.  Because an evidentiary

24  hearing is not required and because Petitioner has not presented any evidence of current

25  incompetence, other than his own statements, and has adequately stated his claims,

26  Petitioner's motion for appointment of counsel is **DENIED**.

27  ///

28

---

[8] Petitioner cites "Exhibit D2," Exhibit D17," and Exhibit D18," but has not submitted these exhibits to the Court.

## **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Petitioner's motion for discovery, request for evidentiary hearing, and motion for appointment of counsel.

**IT IS HEREBY RECOMMENDED** that the District Judge issue an Order approving and adopting this Report and Recommendation denying Petitioner's First Amended Petition for Writ of Habeas Corpus.

**IT IS ORDERED** that no later than **November 21, 2012**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **December 14, 2012**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

DATED:  October 26, 2012

BARBARA L. MAJOR
United States Magistrate Judge